UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILES STEPHAN AXBERG,<br><br>  Plaintiff,<br>v.<br>PATRICK EATON, et al.,<br><br>  Defendants. | Case No. 1:21-cv-00913-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITHOUT PREJUDICE, FOR FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AND THAT PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS* BE DENIED AS MOOT<br><br>(ECF Nos. 1, 2)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Miles Stephan Axberg ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Based on the face of the complaint, Plaintiff did not exhaust his available administrative remedies before filing this action. Accordingly, the Court issues these findings and recommendations, recommending that this action be dismissed, without prejudice, for failure to exhaust available administrative remedies. As the Court is recommending that this action be dismissed, the Court also recommends that Plaintiff's application to proceed *in forma pauperis* (ECF No. 2) be denied as moot.

///

1

Plaintiff has fourteen days from the date of service of these findings and recommendations to file objections.

## I. BACKGROUND

In his complaint, Plaintiff alleges three claims based on the following set of facts. After a COVID-19 outbreak at Growlersburg Conservation Camp, Plaintiff was transferred to Sierra Conservation Center, where he was forced to house with twenty other inmates. Despite repeatedly requesting to be placed in a single cell, Plaintiff was housed in a dorm with other inmates that had been exposed to or had tested positive for COVID-19. Plaintiff eventually contracted COVID-19 and became seriously ill.

In Plaintiff's complaint, Plaintiff admits that administrative remedies were available and that he did not file a grievance before filing this action. (ECF No. 1, pgs. 3-5). Accordingly, on June 16, 2021, the Court ordered Plaintiff to show cause why this action should not be dismissed for failure to exhaust available administrative remedies. (ECF No. 4).

## II. PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff filed his response to the order to show cause on July 15, 2021. (ECF No. 6). Plaintiff once again admits that there were available administrative remedies. (Id. at 1). However, Plaintiff argues that those remedies were not available to him. Plaintiff argues that the relevant procedures lacked authority to provide him with any relief and acted as a dead-end because he contracted COVID-19 "due to the wanton disregard by the defendants," and the "only remedy for this is to un-contract the virus, which is not possible." (Id. at 1-2).

## III. LEGAL STANDARDS

Currently, the California prison grievance system has two levels of review. Cal. Code Regs. tit. 15, §§ 3483, 3486. Generally, "[c]ompletion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant within the Department." Cal. Code Regs. tit. 15, § 3486.

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); see also Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Reyes, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in Ross, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859-60.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

IV.     ANALYSIS

Based on the face of the complaint, Plaintiff did not exhaust his available administrative remedies before filing this action, and Plaintiff's response to the order to show cause does not provide any allegations suggesting that he exhausted (or that he was excused from exhausting) those remedies.

In his complaint, Plaintiff alleges three claims related to actions taken that exposed him to COVID-19. For these claims, Plaintiff admits that administrative remedies were available and that he did not file a grievance before filing this action. (ECF No. 1, pgs. 3-5). Plaintiff's argument is that he did not have to exhaust those administrative remedies because the only possible remedy would be for him to "un-contract" the virus, which is not possible. However, Plaintiff misunderstands the applicable law. As the Court informed Plaintiff in the order to show cause, "[e]xhaustion is not required only where the grievance procedure can prevent an inmate from being injured. Instead, it is required regardless of the relief sought and regardless of the relief offered by the process, unless 'the relevant administrative procedure lacks authority to provide *any relief or to take any action whatsoever* in response to a complaint.' Booth, 532 U.S. at 736 (emphasis added); see also Ross, 136 S.Ct. at 1857." (ECF No. 4, p. 3 n.1).

And here, it is not the case that the administrative procedure lacked authority to provide any relief or take any action whatsoever. A grievance procedure can provide other forms of relief besides preventing the injury complained of in the grievance. In fact, it is common that by the time an inmate files a grievance, it is too late to prevent the injury that is the subject of the grievance. For example, in Booth, the plaintiff "claimed that respondent corrections officers at Smithfield violated his Eighth Amendment right to be free from cruel and unusual punishment by assaulting him, bruising his wrists in tightening and twisting handcuffs placed

upon him, throwing cleaning material in his face, and denying him medical attention to treat ensuing injuries." 532 U.S. at 734.  The plaintiff failed to exhaust administrative remedies, but argued that he was not required to do so because the process could not provide the only relief he still wanted, which was money damages. Id. at 735.  The Supreme Court found that dismissal for failure to exhaust was appropriate, holding that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Id. at 741 (footnote omitted).  In so holding, the Supreme Court noted that "one may suppose that the administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Id. at 737.  See also Woodford v. Ngo, 548 U.S. 81, 94-95 (2006) ("[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court.  When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").

As Plaintiff admits that administrative remedies were available and that he did not file a grievance before filing this action, and as there are no allegations in Plaintiff's complaint or his response to the order to show cause suggesting that he exhausted (or was excused from exhausting) the available administrative remedies, the Court will recommend that this action be dismissed, without prejudice, for failure to exhaust available administrative remedies.

V.   RECOMMENDATIONS AND ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This action be dismissed, without prejudice, for failure to exhaust available administrative remedies;
2. Plaintiff's application to proceed *in forma pauperis* (ECF No. 2) be denied as moot; and
3. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:  **July 29, 2021**              /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE